tioner in respect to his age (and from which I would say he was at least 35 years of age), but I am strongly inclined to the opinion that I should have held, upon his evidence alone, that the petitioner ought to be discharged. But the petitioner himself was sworn as a witness, and directly and positively contradicted Riley in respect to everything which related to his alleged enlistment, or being in uniform, or in the military service; and I have no doubt that he testified to the truth. He also testified that he was 38 years of age last October. The competency of this witness was objected to, but it was insisted that he was competent under the provisions of section 399 of the New York Code, as amended prior to and in 1867. To this it was replied that these provisions, that "a party to an action or special proceeding in any and all courts, and before any and all officers and persons acting judicially, may be examined as a witness on his own behalf," were not applicable to a proceeding on habeas corpus, by reason of the restrictions imposed by the 471st section of the Code, as originally adopted. There may be, possibly, some doubt of the competency of the party under these provisions, but I think there can be no doubt of the actual legislative intention to extend the provision allowing parties to be witnesses to proceedings on habeas corpus except in criminal cases; the only doubt, if any, being whether they have given legal expression to that intention. The only direct decision of a state court or judge upon this question, which has fallen under my observation, is that of Judge Lamont, made when this petitioner was before him on habeas corpus. Judge Lamont (as appears by the proceedings put in evidence here) then declared, in his decision, that "Reynolds himself is a competent witness"; and he based his decision against granting a discharge mainly on the ground that Reynolds had not offered himself as a witness, and thus disproved by the best evidence in his power what had been alleged and sworn to against him. This opinion of Judge Lamont in favor of the competency of the party in this case is, I think, sustained by the reasoning of Judge Hunt in delivering the opinion of the court of appeals in Williams v. People, 33 N. Y. 688; and it will, I presume, be followed in the courts of the state. It was objected that this was in the nature of a criminal proceeding, and that the party, for that reason, was not competent; but this court can entertain no question of the guilt or innocence of the prisoner, and this is not a criminal proceeding, any more than a suit brought against the respondent for the wrongful arrest and illegal imprisonment of the petitioner would be a criminal prosecution. The rule of evidence here should be the same as it would be in such a prosecution. But aside from the provisions of the New York Code, the petitioner was a competent witness in this case. By an act of congress "making appropriations for

sundry civil expenses of the government," and for other purposes, approved July 2, 1864 (13 Stat. pp. 344–351), it is "provided that in the courts of the United States there shall be no exclusion of any witness on account of color nor, in civil action because he is a party to, or interested in the issue to be tried." This is a civil action. See Holmes v. Jennison, 14 Pet. [39 U. S.] 563, per Taney, C. J., concurred in by Story, McLean, and Wayne, JJ., and, at page 597, by Caton, J. It is the legal demand of the petitioner's right in the form prescribed by law, and no question of guilt or innocence can be entertained during its progress. The party is therefore a competent witness under the act of congress. If this is so, there cannot be the slightest possible doubt that the petitioner should be discharged, for the conclusion that the testimony of Riley was false is irresistible.

It is but just to myself to say, in conclusion, that I have not had access to some of the cases referred to in this opinion, and have been compelled to state them from digests or elementary works. I have, however, examined the reports of most of the cases, but, from the haste in which the examination has been made, it is not unlikely that some errors have been committed in stating the facts of the case, or the points decided. I am confident, however, that these errors are not such as should seriously affect my decision upon any of the questions discussed. The petitioner will be discharged.

## Case No. 11,722.
### In re REYNOLDS.
[See Case No. 11,721.]

## Case No. 11,723.
### In re REYNOLDS.
[9 N. B. R. (1874) 50.] [1]
Circuit Court, D. Rhode Island.

BANKRUPTCY — STATE INSOLVENT LAW—CONSTITUTIONAL LAW.

The passage of a bankrupt law for the United States suspends the state insolvent law in force at the time of its passage, in so far as the provisions of the bankrupt law cover the subject matter of the provisions of the state insolvent law.

[Approved in Globe Ins. Co. v. Cleveland Ins. Co., Case No. 5,486.]

The creditors appearing to oppose the petition of Gideon Reynolds for the benefit of the insolvent law of the state, filed a motion to dismiss the petition upon the ground that the jurisdiction of the court over such cases had ceased to exist after the passage of the bankrupt law of the United States in 1867 [14 Stat. 517], it being apparent upon the record that the petitioner's debts exceeded three hundred dollars.

James Tillinghats for creditors.

1st. The exercise by congress of its constitutional powers to establish a uniform law

---

[1] [Reprinted by permission.]